EARL HARRISON, Plaintiff in Error,

*v.*

STATE OF TENNESSEE, Defendant in Error.

394 S.W.2d 713.

(*Nashville,* December Term, 1964.)

Opinion filed September 14, 1965.

32

JAMES PALMER KELLEY, Nashville, for Earl Harrison.

GEORGE F. McCANLESS, Attorney General, MARNE S. MATHERNE, Assistant Attorney General, for the State.

Mr. JUSTICE DYER delivered the opinion of the Court.

This case presents the question of procedure in the introduction of evidence under an indictment for a felony where there is a second count charging the alleged felon with being an habitual criminal under T.C.A. Secs. 40-2801 et seq.

The plaintiff in error was tried under a two count indictment. The first count charged armed robbery accomplished with a deadly weapon. The second count charged plaintiff in error, at the time of the commission of the offense charged in the first count, had been previ-

ously convicted of ten separate felonies set out and detailed therein and was an habitual criminal under T.C.A. Secs. 40-2801 et seq. The proof necessary to sustain both counts was introduced by the State in its evidence in chief. It is alleged such procedure is error in that it denied plaintiff in error a fair trial since the jury in determining his guilt or innocence, under the first count, had before it evidence of prior convictions of felonies.

Habitual criminal statutes do not create an independent crime but define a status prescribing circumstances under which there is an enhanced penalty for the present crime. To be more specific it is first necessary that the jury determine guilt of present crime (count one in the case at bar) before determining guilt or innocence of the habitual criminal count (count two in the case at bar) which finding, if guilty, enhances the punishment of the present crime. If the jury finds not guilty of the present crime then the habitual criminal count is not at issue. *Tipton v. State,* 160 Tenn. 664, 28 S.W.2d 635 (1930); *McCummings v. State,* 175 Tenn. 309, 134 S.W.2d 151 (1939); *State ex rel. Grandstaff v. Gore,* 182 Tenn. 94, 184 S.W.2d 366 (1945); *Ex Parte Bailey,* 60 Okl.Cr. 278, 64 P.2d 278, (1936); *People v. Lamphear,* 6 Ill.2d 346, 128 N.E.2d 892 (1955).

The greater number of our sister states have statutes which permit the imposition of an increased punishment for criminal offense where the defendant has been convicted of prior offenses and important procedural problems have arisen as to how and when prior convictions are to be alleged and proved. Several methods to meet this situation have developed and the prevailing view, either by statute or court decision, is generally designated

as the common law method. See 33 New York University Law Review, 210.

The common law method requires an allegation, as a part of the indictment for the present crime, setting out in necessary detail the prior convictions subjecting the defendant to the greater penalty. The indictment is read to the jury including the charge of the present crime and the prior convictions enhancing the penalty upon conviction of the present crime. The prosecution enters its proof on both the present crime and former convictions as a part of its evidence in chief. This, of course, places before the jury knowledge of the former convictions before they have rendered their verdict on the defendant's guilt or innocence of the present crime.

The reason supporting the common law procedure is that the commission of former crimes is an essential element of the State's case which is required to be proved, as a material fact, beyond a reasonable doubt with the defendant having an opportunity to challenge; and as such it is deemed relevant and material to the State's case in chief. Following this line of reasoning, many jurisdictions, though recognizing that such evidence is prejudicial to the defendant, nevertheless, admit the evidence some with the admonition the trial court instruct the jury to use the evidence only on the issue of habitual criminality. See: *Massey v. United States,* 281 F. 293 (8th Cir. 922); *People v. Jeffries,* 47 Cal.App.2d 801, 119 P.2d 190 (1941); *Waxler v. State,* 67 Wyo. 396, 224 P.2d 514 (1950); *State v. Lovejoy,* 60 Idaho 632, 95 P.2d 132 (1939); *State v. Bailey,* 165 La. 341, 115 So. 613, 58 A.L.R. 1 (1928); *State v. McClay,* 146 Me. 104, 78 A.2d 347 (1951); *State v. Waterhouse,* 209 Or. 424, 307 P.2d 327 (1957); *State v. Meyer,* 258 Wis. 326, 46 N.W.2d 341

(1951) ; *State v. Lutz,* 135 N.J.L. 603, 52 A.2d 773 (1947) ; *State v. Martin,* 275 S.W.2d 336 (Mo.1955)

The plaintiff in error in the case at bar entered a plea of not guilty to both counts of the indictment and the case was tried in accord with the common law method of procedure.

In *State v. Ferrone,* 96 Conn. 160, 113 A. 452 (1921) the Supreme Court of Errors of Connecticut adopted the following method of procedure. The indictment is divided into two parts each on a separate page. The first part sets forth the present offense with which accused is charged and the second part alleges the necessary information required to enhance the penalty upon conviction under the first part. In the absence of the jury the entire indictment is read to the defendant and his plea to each part taken. The next steps will depend on the pleas entered by the defendant. If, as in the case at bar, the defendant enters a not guilty plea to each count of the indictment then the prosecutor reads to the jury the first count of the indictment, containing the charge of the present crime, and a full trial is held with the issues confined to the guilt or innocence of the defendant under this count. If the jury returns a not guilty verdict under this first count the matter is ended. If the verdict of the jury is guilty, under the first count, then this same jury is read the second count and a trial held thereon confined to the issues raised by the second count.

The vital difference between the Connecticut method and the common law method is that former convictions are kept from the jury until the guilt or innocence of the accused, under the charge of the present crime, is determined. The reason for this is stated in *State v. Ferrone,* supra, as follows :

It cannot be believed that an accused man would ever have a fair trial, resulting in a verdict not affected by prejudice or by considerations by which the jury should not be influenced, if during that trial allegations that he has twice before been convicted of state prison crimes have been read to the jury, and evidence of his former convictions has been placed before them. 96 Conn. 160, 113 A. 452.

Utah, by statute has adopted essentially the Connecticut method. See U.C.A. Sec. 76-1-19. Other states have done so by judicial decision. See *State v. Kirkpatrick,* 181 Wash. 313, 43 P.2d 44 (1935); *McWhorter v. State,* 118 Ga. 55, 44 S.E. 873 (1903); *McCallister v. Commonwealth,* 157 Va. 844, 161 S.E. 67 (1931); and *Heinze v. People,* 127 Colo. 54, 253 P.2d 596 (1953).

In the case of *McBride v. State,* 200 Tenn. 100, 290 S.W.2d 648 (1956) the defendant was indicted for violation of the liquor laws. Upon a finding of guilty by the jury the State was then allowed to introduce previous similar violations enhancing the penalty. This procedure was assigned as error and this Court speaking through the late Mr. Justice Swepston said:

Complaint is made that the court did not charge the jury with regard to the punishment to be assessed until after they had found defendant guilty, after which the court then charged with reference to the punishment and permitted the introduction of evidence of previous similar violations of law by the defendant. There was no error in this because it could not have been handled in any other way. The other offenses were violations of the liquor laws and the introduction of same into evidence before the jury found him guilty would have violated the rule in regard to the admissibility of other

offenses as fully discussed in *Harris v. State,* 189 Tenn. 635, 227 S.W.2d 8 and would have been prejudicial to defendant even though admitted solely for the purpose of aiding the jury in the determination of what punishment they should assess if they found him guilty. 200 Tenn. 105, 290 S.W.2d 651.

In *Frost v. State,* 203 Tenn. 549, 314 S.W.2d 33 (1958) the defendant was indicted for driving while intoxicated. Upon the trial the State invoked T.C.A. Sec. 59-1035 enhancing the penalty for previous similar convictions. The evidence of these previous convictions, over objection, was introduced by the State as a part of its evidence in chief which is the common law method on this point. There was timely objection to this procedure. This Court speaking through Mr. Justice Tomlinson referring to the holding in *McBride v. State,* supra (shown above in this opinion) said:

> Such holding in the McBride case was undoubtedly correct and in accord with the general rule. That rule is stated in 24 C.J.S. Criminal Law sec. 1969(b), p. 1167, wherein, in dismissing the order of trying the issues in a prosecution of accused as a second or subsequent offender the rule is stated to be that:
>
> > 'In the absence of statutory provisions relating thereto, it has been held that the manner of presenting issues is discretionary with the trial court, * * *.' 203 Tenn. 552, 314 S.W.2d 35.

The Court found the language in the McBride case requiring the procedure used in that case to be mandatory was in fact dictum. The Frost opinion was reversed on other grounds than this procedural point and the late Mr. Justice Swepston (concurring in the results) said:

I concur in the reversal of this judgment, but my objection to the majority opinion is that the Court is now reneging on what was said and approved in the case of *McBride v. State,* 200 Tenn. 100, 290 S.W.2d 648. I concede that it was dictum but it put the stamp of approval on the method of procedure adopted by Judge Kizer in that case, which assures an accused a fair trial, whereas the procedure now approved by the majority opinion practically assures that the accused will not get a fair trial. One does not have to be an expert psychologist to know that when an accused is being tried for a present offense of driving while intoxicated, the jury is most certainly going to find him guilty of the present offense, if evidence of prior offenses of driving while intoxicated is admitted into evidence. The introduction of prior offenses immediately changed the picture from that of an apparent first offender to that of a repeater or a recidivist. I am not so naive, and I do not believe that many people are, as not to know that this is true. 203 Tenn. 557-558, 314 S.W.2d 37.

In the case of *Beeler v. State,* 206 Tenn. 160, 332 S.W. 2d 203 (1959) the defendant was indicted on three counts of burglary with the fourth count charging him with being an habitual criminal under T.C.A. Secs. 40-2801 et seq. The procedure used in the trial of the cause was essentially that approved in *State v. Ferrone,* 96 Conn. 160, 113 A. 452 (1921). Upon appeal there was objection to such procedure on the ground it amounted to trying the case piecemeal. This Court speaking through Mr. Justice, now Chief Justice Burnett said:

As to the method to which this matter was tried, that is, separating the burglary charge and the habitual

criminal charge before the same jury, 25 Am. Jur., page 270, Sec. 23, has this to say:

'After the jury return a verdict of guilty on the first part, the second part of the indictment may be read to them without reswearing them, and they may be charged to inquire on that issue.'

That is exactly what was done here and as we have heretofore said we think it was a fair way to try the accused. 206 Tenn. 166, 332 S.W.2d 206.

In the case of *Burrus v. State,* 216 Tenn. 586, 393 S.W.2d 159, the indictment charging defendant with driving while intoxicated also alleged prior similar convictions enhancing the penalty. The issues were presented to the jury in accord with the common law method and upon appeal here the judgment was affirmed by a divided court.

Under the cases reviewed here, in Tennessee, the rule of procedure on the introduction of evidence of former convictions enhancing the penalty of the present crime is a matter of discretion with the trial judge.

There are limits to the human mind. We think to say to any jury, there is evidence here the defendant before you has been guilty of several prior crimes but you are not to consider this in determining his guilt or innocence of the present crime, is at best to severely test the ability of the mind to remove all prejudice therefrom.

■ The issue here for decision does not involve a defendant's constitutional rights nor is it one where justice clearly demands a change; for after all the former convictions of a defendant proved against him under the common law method are of his own making. Also, the former law has not been so settled in reason that we have stuck to it inflexibly. It has in fact been applied at the

trial judge's discretion. Nevertheless, we are of the opinion to allow a jury to have before it evidence of former convictions, at the time they are required to decide upon the defendant's guilt or innocence of the present crime, will deny to a defendant the procedural fairness due him. This is particularly true since the matter can be disposed of with reasonable dispatch and at no extra cost to the public by procedure such as the Connecticut method in *State v. Ferrone,* supra, and/or the method used by Judge Kizer in *McBride v. State,* supra.

■ It results and we so hold, it is prejudicial error to allow knowledge or evidence of previous convictions, enhancing the penalty upon conviction of the present crime, to be placed before the jury prior to their determination of defendant's guilt or innocence of the present crime.

In his new trial, plaintiff in error herein must be given the benefit of the settlement we now make in the procedure of trials involving habitual criminal counts. Also, the tenets of stare decisis compel us to apply the now settled rule to all future cases reaching this Court, even those presently in the appellate process.

■■ However, we will not permit this new rule to serve as a basis for collateral attack on convictions upon which prisoners have either exhausted or waived the appellate process. The administration of justice and the integrity of our court system demand, in addition to fair treatment under the law, a certain degree of finality to criminal judgments. The demands of fairness to those accused and the demands of finality to judgments must, therefore, be weighed carefully whenever we are presented the problem of whether or not to apply a newly announced rule retroactively.

■ In examining the demands of fairness to prisoners convicted under the old procedure, we are, of course, aware that there are certain fundamental rights that are invoked in an attempt to protect innocent defendants from wrongful conviction. These rights are of such primary importance in a free society that they are generally endowed with constitutional protection, and where they are recognized for the first time in a jurisdiction, they are often given retroactive effect. See, e. g., *Doughty v. Maxwell*, 376 U.S. 202, 84 S.Ct. 702, 11 L.Ed.2d 650 (1964) (right to counsel); *Eskridge v. Washington State Bd.*, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958) (indigent's right to transcript on appeal). But see *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965) (illegal search and seizure rule will not be applied retroactively). We do not think the change in procedure announced herein recognizes rights of such a dimension that the refusal to give it retroactive effect neglects fundamental fairness.

■ Our decision is not to be construed as an inference that in every case where a trial judge, in his discretion, allowed evidence of other convictions to be before a jury, the defendant was deprived of his constitutional rights. Nor do we say that had the rule been as we now announce it, any defendant convicted under the old rule would probably have been acquitted. We merely change a point of procedure to one more acceptable in that it will guard against the possibility of prejudice entering a criminal trial because of the abuse of the judge's discretion.

■ We hold, therefore, that this decision is not to be given retroactive effect beyond those cases now in the appellate process.