HOLLOWAY M. SEALS *v.* THE STATE OF TENNESSEE.

1. CRIMINAL LAW. *Malice aforethought. What constitutes.* The Circuit Judge charged the jury, "If you find that the defendant killed the deceased with malice aforethought, that is, wilfully of purpose, that the blow by which the life of the deceased was taken, should have that effect, but without deliberation or premeditation, the defendant will be guilty of murder in the second degree." *Held,* that this definition of malice aforethought is not correct; that malice aforethought is not to be inferred from deadly intent merely, as a deadly intent may exist in a case of self-defence, or upon sudden and reasonable provocation.

   Cases cited: Quarles *v.* The State, 1 Sneed, 407; Dains *v.* The State, 2 Hum., 439.

2. SAME. *To reduce killing to manslaughter.* It is not necessary to reduce killing to manslaughter that the passion should be so great as to render the defendant incapable of deliberation or premeditation. If the circumstances be of such a nature as are calculated to produce such excitement and passion, as would obscure the reason of an ordinary man, and induce him, under such excitement and passion, to strike the blow that causes the death of the deceased, this will reduce the killing to manslaughter.

   Cases cited: Young *v.* The State, 11 Hum., 202; Maher *v.* The People. 19 Mich., 212.

3- SAME. *Same. Charge of Court. Presumption of malice. Use of deadly weapon will not constitute. When.* It ought to have been left to the jury to determine under proper instructions, whether the obscene language of the deceased, used in presence of the defendant's family, and at his table, in connection with his vexatious conduct, was calculated to produce such an excitement and passion, as would obscure the reason of an ordinary man, and induce him, under the excitement and passion so produced, to strike the blow, and whether, in fact, the blow was stricken in consequence of the heat of passion so produced. If

Holloway M, Seals *v.* The State of Tennessee.

defendant struck the blow under passion produced by an adequate provocation, the simple fact that he used a deadly weapon, would not alter the case.

FROM DICKSON.

Appeal from the Circuit Court.

ATTORNEY-GENERAL HEISKELL for the State.

No counsel for Seals.

NICHOLSON, C. J., delivered the opinion of the Court.

Holloway M. Seals was indicted in the Circuit Court of Dickson county, for the murder of James Jones. He was convicted of murder in the second degree, and sentenced to the penitentiary for ten years. The case is before us on his appeal.

Two errors in the charge of the Court to the jury are mainly relied on, for a reversal of the judgment.

1. After defining murder in the first degree, with sufficient accuracy and clearness, the Circuit Judge proceeded as follows :

"If you find, then, that the defendant killed the deceased with malice aforethought, that is, wilfully of purpose, that the blow by which the life of the deceased was taken, should have that effect, but without deliberation or premeditation, the defendant will be guilty of murder in the second degree."

It is well settled, that, to constitute murder in the second degree, there must be malice aforethought,

express or implied. The Judge charged, that there must be malice aforethought, but he gives an entirely erroneous definition of what malice aforethought is. He said, that, if the defendant did the killing with malice aforethought, that is, wilfully of purpose, that the blow should have that effect, but without deliberation or premeditation, the killing would be murder in the second degree. As held in the case of *Quarles* v. *State*, 1 Sneed, 407, and *Dains* v. *State*, 2 Hum., 439, malice aforethought is not to be inferred from the deadly intent merely, for that may exist in a case of self-defence, or upon sudden and reasonable provocation. The charge confounds the offences of murder in the second degree and voluntary manslaughter.

The prisoner was entitled to a correct exposition of the law, and in a matter of so much consequence to him, we cannot assume that the error was not injurious to his case, especially as he was found guilty of the offence thus erroneously defined.

2. The charge of the Circuit Judge, on the subject of voluntary manslaughter, is objected to as erroneous. In defining voluntary manslaughter the Judge said, " Did the defendant kill the deceased voluntarily, upon a sudden heat of passion, brought about by a sufficient legal provocation—so great as that it rendered the defendant incapable of deliberation or premeditation; if he killed him under such passion alone, without malice, either express or implied, then he is guilty of voluntary manslaughter." Again, the Judge said : " The words of the deceased, or his conduct, or both,

calculated to induce the belief that he intended to provoke a difficulty, no matter how obscene the words may have been, nor how vexatious his conduct may have been, will not, of themselves, reduce a killing of murder in the second degree to manslaughter. Such conduct, upon the part of the deceased, would not be a sufficient legal provocation as would repel the presumption of malice, when the proof shows the defendant used a deadly weapon in the killing."

The first objection to this charge is, that, in defining the provocation which will reduce murder in the second degree to manslaughter, the Judge says, it must produce a sudden heat of passion "so great as to render the defendant incapable of deliberation or premeditation." Manslaughter, as defined in the Code, §4603, is the unlawful killing of another, without malice, either express or implied, which may be either voluntary upon a sudden heat, etc.

The sudden heat, which is the distinguishing feature in voluntary manslaughter, must be produced by adequate provocation. What is the character of the provocation which is deemed adequate, is thus defined in the case of *Maher* v. *The People*, 10 Mich. 212. " The principle involved in the question would seem to suggest, as the true general rule, that reason should, at the time of the act, be disturbed or obscured by passion to an extent which might render ordinary men, of fair average disposition, liable to act rashly or without due deliberation or reflection, and from passion rather than from judgment."

This definition of the character of adequate provocation in producing the heat of passion that distinguishes manslaughter from murder in the second degree, is substantially the same with that given by this Court, in the case of *Young* v. *The State,* 11 Hum., 202, as follows: " There must be sudden passion, upon reasonable provocation, to negative the idea of malice, but we think the manner in which his Honor repeats several times in his charge, that reason must be ' dethroned,' and ' that there must be a whirlwind of passion' in order to mitigate a killing to manslaughter, was calculated to exclude from the jury the possibility that a sane man, having sense and reason, could, excited by anger and heat of blood, be guilty of manslaughter."

In the case of *Quarles* v. *The State,* 1 Sneed, 409, the rule is stated as follows: " Manslaughter may be voluntary, as where, upon a sudden quarrel, two persons fight, and one of them kills the other, we are to presume that the intention accorded with the act, but if the intention and act were the result of impulse and passion, excited upon sudden and adequate provocation, the idea of malice is repelled, and the killing is only manslaughter." We are not to suppose that a person thus excited is deprived of all reason, so as to be incapable of purpose or intention."

Tested by the rule recognized by the several authorities cited, we think the Circuit Judge stated it too broadly and strongly, when he charged, that, the heat of passion brought about by an adequate provocation,

must be "so great as to render the defendant incapable of deliberation or premeditation."

This was tantamount to telling them that the provocation must be such, not merely that the act must be committed, when, by passion, the defendant "was liable to act rashly or without due deliberation or reflection," but when his reason was "dethroned" by a "whirlwind of passion," or, as expressed by the Judge, when the defendant was "rendered incapable, from passion, of deliberation or premeditation."

The next objection to the portion of the charge quoted, is, that he told the jury that it mattered not how obscene the language of the deceased was, or how vexatious his conduct may have been, these will not, of themselves, reduce a killing to manslaughter. To which the Judge added, "such conduct would not be a sufficient legal provocation to repel the presumption of malice, when the proof shows that the defendant used a deadly weapon in the killing."

In this charge, the Judge passes upon the facts, and instructs the jury, that, as they consist of words and conduct of the deceased, they do not constitute adequate provocation. In one sense, it is the business of the Judge to determine what constitutes an adequate provocation but whether facts are proven, which, in law, will amount to such provocation, is a matter for the jury. We think the rule is laid down with reasonable correctness in the case of *Maher* v. *The People,* 10 Mich., 212, as follows: "It is doubtless, in one sense, the province of the Court to define what, in law,

will constitute a reasonable or adequate provocation, but not, I think, in ordinary cases, to determine whether the provocation proved in the particular case is sufficient or reasonable. This is essentially a question of fact, and to be decided with reference to the peculiar facts of each particular case. As a general rule, the Court, after informing the jury to what extent the passion must be aroused and reason obscured, to render the homicide manslaughter, should inform them that the provocation must be one, the tendency of which would be to produce such a degree of excitement and disturbance in the minds of ordinary men; and if they should find such provocation from the facts proved, and should further find that it did produce that effect in the particular instance, and that the homicide was the result of such provocation, it would give it the character of manslaughter."

In the present case the Judge held, that the words of the deceased however obscene, and his conduct however vexatious, could not amount in law to reasonable or adequate provocation, and upon that view of the law, withdrew from the jury the consideration of the facts. It is true, as a general rule, that no provocation by words alone will reduce the crime of murder to that of manslaughter, but in this case the Judge instructs the jury, that no matter how vexatious the conduct of the deceased may have been, it could not amount to an adequate provocation, that is no matter how much the defendant may have been excited, no matter how much passion may have been

30—vol. 3.

produced by the conduct and words of the deceased, it could not be considered an adequate provocation. It ought to have been left to the jury to determine under proper instructions, whether the obscene language of the deceased, used in presence of the defendant's family, and at his table, in connection with his vexatious conduct, was calculated to produce such excitement and passion, as would obscure the reason of an ordinary man, and induce him, under the excitement and passion so produced, to strike the blow, and whether in fact the blow was stricken in consequence of the heat of passion so produced. If defendant struck the blow under passion produced by an adequate provocation, the simple fact that he used a deadly weapon, would not alter the case. We are not to suppose that a person thus excited, is deprived of all reason. That is not the state of the mind; but being greatly excited upon sufficient cause, he is impelled by a sudden motive of revenge, and that includes the idea of malice, whether he strikes with a deadly weapon or not. The fact that he used a deadly weapon in connection with other circumstances, may be properly looked at, in determining whether the blow was the result of the sudden passion; but when the jury are satisfied that the defendant was impelled by sudden passion, produced by sufficient provocation to strike, the simple fact of using a deadly weapon would not make the blow malicious.

Other exceptions have been taken to the charge which we do not deem it necessary to notice, as the errors already pointed out, make it proper to reverse

the judgment, and for the same reason we have abstained from making any comments on the proof in the cause. Judgment reversed.